UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| RUBY JUSTICE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 14-286-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Ruby Justice ("Justice" or "the Claimant") and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 16, 17] Justice argues that the decision of the administrative law judge ("ALJ") assigned to her case was not supported by substantial evidence and that the ALJ erred by relying on the testimony of the vocational expert ("VE") in determining that she could perform other work in the national economy. Conversely, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons discussed below, remand for further proceedings is necessary.

**I.**

On August 5, 2011, Justice filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act ("the Act"), and supplemental security income under Title XVI of the Act. [Record No. 8-1, Administrative Transcript,

"Tr.," p. 11] She alleges a disability beginning February 18, 2011.[1] [*Id.*] Justice, along with attorney Robert Cornett and VE Betty Hale, appeared before ALJ Karen R. Jackson on January 15, 2013, for an administrative hearing. [Tr., pp. 25–51] On February 4, 2013, the ALJ found that Justice was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act. [Tr., p. 20] Justice appealed with the SSA's Appeals Council. However, this appeal was denied on May 9, 2014. [Tr., pp. 1–3]

Justice was 45 years old when her alleged disability began on February 18, 2011, and 47 years old at the time of ALJ Jackson's decision. She has a high school education and previously worked as a fast food cashier and general office clerk. [Tr., p. 19] After considering the testimony presented during the administrative hearing and reviewing the record, the ALJ concluded that Justice suffers from severe impairments including: chronic neck pain secondary to mild scoliosis; chronic back pain secondary to degenerative disc disease, lumbar spine; migraine headaches; history of left knee pain secondary to meniscal tear; mood disorder, not otherwise specified ("NOS"); anxiety disorder, NOS; personality disorder, NOS with dependent and borderline traits; and alcohol dependence, in full sustained remission. [Tr., pp. 13–14] Notwithstanding these individual impairments, the ALJ concluded that the Claimant maintained the residual functional capacity ("RFC") to perform less than the full range of light work, with the following parameters:

---

1   Justice originally alleged that her disability began February 1, 2008. However, she amended the onset date during her administrative hearing on the advice of counsel. Justice previously applied for disability insurance benefits and supplemental security income alleging a disability beginning on October 1, 2008. That application was ultimately denied by ALJ Ronald M. Kayser in a decision dated February 17, 2011. [Tr., pp. 57–68] In deciding the present case, ALJ Jackson expressly adopted ALJ Kayser's findings in denying benefits for the previous application. [Tr., pp. 15–16]

> [Justice can] lift and/or carry 20 pounds occasionally, 10 pounds frequently; stand or walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; occasionally push or pull with bilateral upper extremities; occasionally balancing, stooping, kneeling, crouching; never crawl; frequently overhead reaching with bilateral upper extremities; simple routine tasks; can sustain attention for simple tasks for two-hour segments over an eight-hour workday; can tolerate contact with supervisors and coworkers as needed with occasional contact with general public; can adapt to situational changes and pressure of a routine setting; should avoid hazards such as unprotected heights or dangerous machinery; no climbing of ladders, ropes or scaffolds.

[Tr., p. 15]

After considering Justice's age, education, work experience, and RFC, the ALJ concluded that there were a significant number of jobs in the national economy that she could perform, including inspecting, grading/sorting, and handpacking. [Tr., p. 20] Thus, the ALJ determined that Justice was not disabled from February 18, 2011, through the date of the administrative hearing. [*Id.*]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity,' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether she can perform his past work. If she can, she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents her from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether

the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial-evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). In other words, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.

Justice asserts that the ALJ erred in evaluating the medical opinions and evidence in the record when constructing her RFC. She also contends that the ALJ failed to review probative medical exhibits in the record and improperly relied upon the testimony of the vocational expert to find that she could perform other work in the national economy. [Record No. 16-2]

**A. Medical Opinions and Evidence**

    **1. Dr. M. Maude O'Neill**

The RFC determination is a matter reserved for the ALJ. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(f) (outlining the five-step sequential evaluation process used to ascertain whether a claimant is disabled); *see also Edwards v. Comm'r of Soc. Sec.*, 97 F. App'x 567, 569 (6th Cir. 2004) ("[The RFC] determination is expressly reserved for the Commissioner."). In making an RFC determination, an ALJ must consider the medical evidence, non-medical evidence, and the claimant's credibility. *See* 20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.945(c). Justice asserts that the ALJ erred in evaluating the opinions of consultative examiner Dr. M. Maude O'Neill, Ph. D. [Record No. 16-2, pp. 1–2] As a result, she contends that the ALJ's RFC is not supported by substantial evidence. In evaluating Dr. O'Neill's opinions, the ALJ provided them "great weight." [Tr., p. 18]

Dr. O'Neill examined Justice on October 12, 2011, and reviewed a previous examination of Justice performed by Dr. Harwell Smith, Ph. D., in connection with her previous unsuccessful application for benefits. [Tr., pp. 426–32] Dr. O'Neill stated that the Claimant entered the examination walking slowly and with a drawn-in posture; however, her posture was normal and she walked with regular speed when leaving. She also recorded that Justice did not appear to provide her best effort on testing, causing "some question" about her credibility. [Tr., p. 427, 430] Dr. O'Neill diagnosed Justice with mood disorder NOS, anxiety disorder NOS with panic symptoms, alcohol dependence in full sustained remission, and personality disorder NOS with dependent and borderline traits. [Tr., p. 430] Dr. O'Neill's medical source statement found a mild impairment in the Claimant's ability to understand and remember simple instructions, a mild to moderate impairment in her ability

to sustain attention and persistence to complete tasks in a normal amount of time, and moderate impairments in her abilities to adapt and respond to pressures associated with day-to-day work activities and respond appropriately to supervision, co-workers, and the public. [Tr., p. 431] Dr. O'Neill also determined that Justice's Global Assessment Functioning ("GAF") was 50-53. [*Id.*]

Justice seems to contend that although the ALJ's decision provided "great weight" to Dr. O'Neill's opinions, it was not reflected in the RFC. A claimant's "nonexertional capacity must be expressed in terms of work-related functions." *Program Operations Manual System* (POMS) DI 24510.006.[2] The RFC should not include "severity ratings or nonspecific qualifying terms (*e.g.*, moderate, moderately severe)" to describe limitations because they do not adequately describe the function or articulate the degree of capacity limitations. POMS DI 24510.065. Thus, even though the ALJ gave Dr. O'Neill's opinions great weight, they still needed to be incorporated into a proper RFC.

Here, the RFC that Dr. O'Neill's opinions were given great weight and incorporated into work-related functions in light of the evidence in the administrative record. As stated earlier, Dr. O'Neill found a mild impairment in the Claimant's ability to understand and remember simple instructions. [Tr., p. 431] This opinion was addressed in the RFC by limiting Justice to "simple routine tasks." [Tr., p. 15] Dr. O'Neill also stated that Justice had a mild to moderate impairment in her ability to sustain attention and persistence to complete

---

2   The POMS is a policy and procedure manual that employees of the Department of Health and Human Services use to evaluate Social Security claims. It does not have the force and effect of law; however, it does provide persuasive authority. *See Davis v. Se'y of Health and Human Servs.*, 867 F.2d 336, 340 (6th Cir. 1989); *Skeen v. Astrue*, Civil Action No. 6: 09-62-JMH, 2010 WL 598612, *3 n.2 (E.D. Ky. Feb. 17, 2010).

tasks in a normal amount of time. [Tr., p. 431] This opinion was included in the RFC by limiting Justice to two-hour segments of sustained attention for simple tasks over an eight-hour workday. [Tr., p. 15] Finally, Dr. O'Neill stated that Justice had moderate impairments in her ability to adapt and respond to pressures associated with day-to-day work activities and respond appropriately to supervision, co-workers, and the public. [Tr., p. 431] The ALJ's RFC accounted for these opinions by finding that Justice could "adapt to routine settings" and could "tolerate contact with supervisors and coworkers as needed with occasional contact with general public." [Tr., p. 15] Dr. O'Neill did not provide any opinions regarding the Claimant's ability to work or finding that she was otherwise disabled.

In light of the record before the ALJ, the RFC adequately accounted for the opinions of Dr. O'Neill. Thus, the ALJ did not err in evaluating and incorporating these opinions.

### 2. Dr. Harwell Smith

Justice also contends that the ALJ erred in considering the opinion evidence of consultative examiner Dr. Harwell Smith, Ph. D. [Record No. 16-2, p. 2] Dr. Smith examined the Claimant on December 15, 2009. [Tr., pp. 301–08] The medical evidence and opinions resulting from the examination were part of the record of the Claimant's previously-adjudicated claim, and were found to support ALJ Kayser's determination that Justice was not disabled. In the present decision, the ALJ expressly adopted the previous administrative decision, including the assessment of Dr. Smith's opinion and medical evidence, citing *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997). [Tr., pp. 15, 16 n.8] *Drummond* "requires that a previous ALJ's findings and determinations are controlling in subsequent, unadjudicated periods unless there is new and material evidence or a showing of

'changed circumstances.'" *Shell v. Colvin*, Civil No. 13-205-GFT, 2015 WL 268861, at *5 (E.D. Ky. Jan. 21, 2015) (quoting *Drummond*, 126 F.3d at 842); *see also* SSAR 98-4(6). Therefore, res judicata applies in social security proceedings and, "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." *Drummond*, 126 F.3d at 842.

Justice argues that the ALJ failed to provide "good reasons" for "discarding" the psychological findings and assessments of Dr. Smith. [Record No. 16-2, p. 2] However, as stated earlier, ALJ Jackson incorporated Dr. Smith's opinions into her RFC determination by expressly adopting the previous administrative decision. In reaching the 2011 decision, ALJ Ronald M. Kayser specifically found that Dr. Smith's opinions and medical evidence supported a finding that Justice was not disabled. [Tr., pp. 57–68] Therefore, under *Drummond*, ALJ Jackson was barred from considering anew the opinions of Dr. Smith which had already been litigated and included in the previous denial of benefits. *See Shell*, 2015 WL 268861, at *7. Because Dr. Smith's opinions and medical evidence does not qualify as "new and material evidence" it was not error for ALJ Jackson to decline to re-evaluate the evidence in Justice's present claim.[3]

---

[3] Further, because Dr. Smith was a consultative examiner, the ALJ would not have been required to give "good reasons" for the weight attributed to his opinions even if a previous administrative decision had not occurred. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *Burton v. Astrue*, Civil Action No. 5: 12-208-DCR, 2013 WL 85073, at *6 (E.D. Ky. Jan. 7, 2013).

### 3. Dr. Stephanie Sheffield

Justice next asserts that the ALJ erred by ignoring the opinion of her treating physician Dr. Stephanie Sheffield, M.D. [Record No. 16-2, pp. 2–3, 13–14] A treating physician is a physician that "has, or has had, an ongoing treatment relationship" with the claimant. 20 C.F.R. §§ 404.1502, 416.902. Dr. Sheffield continually treated the Claimant for migraine headaches starting on March 18, 2011, and Justice remained a patient at least through January 25, 2013.[4] [*See* Tr., pp. 381–88, 463–89, 506] The record demonstrates that Justice visited Dr. Sheffield six times during that period, had contact with Dr. Sheffield over the phone on numerous occasions, and that Dr. Sheffield prescribed her various medicines to treat the migraines. [*Id.*] Thus, Dr. Sheffield qualifies as a treating physician.

As a treating physician, Dr. Sheffield's opinions are entitled to consideration and deference. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If complete deference is not given, the ALJ is required to clearly elaborate regarding the weight given to the opinion and the reason for this decision. *Id.* The "clear elaboration requirement [is] imposed explicitly by the regulations." *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008). As Social Security Ruling 96-2p explains:

> The notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

---

4  Because Dr. Sheffield began seeing Justice after her first administrative decision on February 17, 2011, res judicata does not apply to the medical evidence and opinions of Dr. Sheffield.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Wilson*, 378 F.3d at 544. The dual purpose of this requirement is to help claimants understand disposition of their cases and "ensure[] that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544–45 (citations omitted). Failure to abide by this requirement can result in the matter being remanded. *Id.* at 545; *see also Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.").

Included in the record is a medical assessment in which Dr. Sheffield states that "during migraines [Justice] is really unable to function in any meaningful way." [Tr., p. 506] ALJ Jackson did not address this opinion, or directly comment on any of the other treatment notes resulting from visits with Dr. Sheffield. Instead, in commenting on the opinion evidence in the case, the ALJ only stated that the record revealed "no restrictions recommended by a treating doctor" and that there were no "opinions from treating or examining physicians indicating the claimant is disabled or even has limitations greater than those determined in this section." [Tr., p. 18] However, as stated earlier, Dr. Sheffield qualifies as a treating physician in this case. As a result, the ALJ was required to explain what weight, if any, she gave to Dr. Sheffield's opinion, and state the reasons for any weight given, which the ALJ did not do. Further, even if Dr. Sheffield's opinion was inconsistent with other evidence in the record as the Commissioner contends, the ALJ is still required to

demonstrate that she considered Dr. Sheffield's opinion. *See Wilson*, 378 F.3d at 544. Thus, the ALJ erred by failing to provide the requisite good reasons explaining the weight given to Dr. Sheffield's opinion.

**B. Harmless Error**

The Commissioner argues that, even if error occurred, it should be found to be harmless because there is no evidence supporting Dr. Sheffield's opinion. [Record No. 17, pp. 8–9] For an agency's violation of its own procedural rules to constitute reversible error, there must be a showing that "the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Connor v. U. S. Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983). In *Wilson*, the Sixth Circuit held that the good reasons requirement is an important procedural safeguard for claimants, and that an ALJ's failure to give these good reasons constitutes a deprivation of substantial rights. *Wilson*, 378 F.3d at 547. The *Wilson* Court left open the possibility that a *de minimis* violation of the good reasons requirement may constitute harmless error, such as where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it." *Id.* at 547; s*ee also Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (holding that an ALJ's failure to state how much weight was given to the treating source's opinion is harmless under *Wilson* because the ALJ's opinion is completely consistent with the treating source's opinion). Further, harmless error has been found where good reasons were not given when the ALJ indirectly attacked the treating physician's opinion. *See. e.g.*, *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 471–72 (6th Cir. 2006).

In the present case, the ALJ referenced Justice's testimony at the administrative hearing regarding her migraine headaches in detail and stated that the migraines resulted in few visits to the emergency room. The ALJ also concluded that the medical evidence did not support the disabling effects reported by the Claimant and referenced the findings of Dr. O'Neill. [Tr., pp. 17–18] However, while Dr. Sheffield's opinion was more restrictive than that of Dr. O'Neill, Dr. Sheffield's opinion (as Justice's treating physician specifically in regards to her migraine headaches) was not so patently deficient as to warrant a finding of harmless error. As a result, the Court is unable to discern the weight the ALJ gave to the opinion of Dr. Sheffield. Additionally, as the *Wilson* Court explained,

> [a] court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. A procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway. To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with [20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2)], would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory.

*Id.* at 546.

### IV.

Under *Wilson*, the ALJ's failure to comply with the good reasons requirement in 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2) constitutes reversible error. Therefore, the Court will reverse the ALJ's decision to deny benefits, and will remand the matter for a rehearing pursuant to sentence four of 42 U.S.C. § 405(g).[5] Accordingly, it is hereby

---

5   Because remand is warranted, analysis of the parties' claims regarding the ALJ's review of the medical evidence and reliance on the testimony of the vocational expert is unnecessary at this time. *See Young v. Colvin*, No. 3: 12cv00029, 2013 WL 3350828, at *10 n.5 (S.D. Ohio July 3, 2012).

**ORDERED** as follows:

1. Plaintiff Ruby Justice's Motion for Summary Judgment [Record No. 16] is **GRANTED**, in part, to the extent that she seeks a remand for further administrative proceedings. To the extent she seeks benefits, the motion is **DENIED**.

2. Defendant Carolyn W. Colvin's Motion for Summary Judgment [Record No. 17] is **DENIED**.

3. The decision of Administrative Law Judge Karen R. Jackson is **REMANDED** for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g).

This 23rd day of March, 2015.



Signed By:
*Danny C. Reeves* DCR
United States District Judge